UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOHN PAT HICKS, ) <br> ) <br> Plaintiff, ) <br> ) <br> VS. ) <br> ) <br> CHASE HOME FINANCE LLC, ET AL., ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. <br><br> 3:09-CV-1652-G |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants, Chase Home Finance LLC ("Chase") and U.S. Bank National Association ("U.S. Bank"), for summary judgment (docket entry 12). For the reasons set forth below, the motion is granted.

### I. BACKGROUND

#### A. Factual Background

This is an action brought by the plaintiff, John Pat Hicks ("Hicks"), against Chase and U.S. Bank for breach of contract and violation of both the Texas Deceptive Trade Practices Act ("DTPA") and the Texas Debt Collection Practices Act

("TDCA"). Plaintiff's Original Petition ("Petition") ¶¶ 22-30. The plaintiff's claims arise out of an agreement he made with Chase to modify the terms of an existing mortgage and avoid foreclosure on his home. Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition") at 2.

On February 3, 2005, Hicks executed an adjustable rate note (the "note" or "loan") payable to the order of Home Loan Corporation, d/b/a Expanded Mortgage Credit, in the principal amount of $283,400. Defendants Chase Home Finance LLC and U.S. Bank National Association's Brief in Support of Motion for Summary Judgment ("Defendants' Brief") at 9. To secure payment of the note, a deed of trust (the "deed of trust" or "mortgage") was concurrently executed by Hicks and his wife and recorded in the Real Property Records of Dallas County, Texas. *Id*; *see also* Defendants Chase Home Finance LLC and U.S. Bank National Association's Appendix in Support of Motion for Summary Judgment ("Defendants' Appendix") at 11-25. The note and the deed of trust were subsequently acquired by U.S. Bank, and Chase became the loan servicer. *See* Defendants' Brief at 10.

Hicks fell behind on his loan payments in early 2007. Defendants' Brief at 10. On May 27, 2008, Hicks and Chase agreed to modify the loan to bring it current by capitalizing the past-due balance and adjusting the interest rate and payment amount. Plaintiff's Opposition at 2. To this end, Hicks and Chase executed a written loan modification agreement (the "modification agreement") containing

certain conditions that Hicks must satisfy "within the time required" before it would become effective, including Hicks making "a good faith down payment in the amount of **$9,000.00** on or before **June 5, 2008**." Defendants' Appendix at 39 (emphasis in original). The modification agreement expressly stated that "[u]ntil the date when all requirements and conditions of this letter have been met to our satisfaction (the '**Effective Date**'), you acknowledge that we may begin and/or continue to pursue collection efforts, including foreclosure, to the extent we deem necessary to preserve our rights under the Loan." *Id*. at 38 (emphasis in original). The modification agreement also required Hicks to make "[m]onthly payments of **$1,717.23** beginning on **July 1, 2008**, and continuing through and including **June 1, 2013**." *Id*. at 44 (emphasis in original).

Hicks failed to make the required down payment on or before June 5, 2008. Plaintiff's Opposition at 3. He contends that Chase informed him that it would accept the payment after June 5, 2008 if he submitted it via Western Union, which he did on June 26, 2008. *Id*.; *see also* Declaration of John Pat Hicks ("Hicks' Declaration") ¶¶ 7-8, *attached to* Plaintiff's Amended Appendix in Support of His Response to Defendant's Motion for Summary Judgment *as* Exhibit A. Chase designated Hicks' $9,000 down payment as untimely and placed it into a suspense account. Defendants' Brief at 12. Since then, Hicks has only made two payments on the loan: one on July 30, 2008 and one on September 30, 2008, both in the amount

of $1,717.23, and both of which were designated as untimely by Chase. Hicks' Declaration ¶¶ 15, 19; Defendants' Brief at 12. The plaintiff alleges that he did not make any other payments on the loan because Chase told him that he could not do so until the modification agreement "closed." Hicks' Declaration ¶ 14.

After receiving the payment he submitted on July 30, 2008, Chase informed Hicks that his payment was short of the required amount and requested that he pay $1,812.16 per month in addition to the $1,717.23 specified in the terms of the modification agreement. *Id*. ¶ 15-17. On September 23, 2008, Chase demanded that Hicks pay $7,058.78 by the end of the month to avoid foreclosure. *Id* ¶ 17. In a statement sent to Hicks in October of 2008, Chase listed the total payment due as $17,924.53, which included the $1,717.23 principal and interest payment under the modification agreement, a payment of $1,812.16 into "escrow," and $14,117.56 in "past due payments." *Id*. ¶ 20. Chase sent Hicks a letter on October 1, 2008 stating that the interest rate on the loan would increase to 9.6255%. *Id*. ¶ 12. On December 2, 2008, Chase informed Hicks that his home would be sold in a foreclosure sale on January 6, 2009. *Id*. ¶ 23.

After a series of communications between the parties regarding the proper amounts due under the modification agreement, Chase sent Hicks a letter, dated July 1, 2009, acknowledging that it had failed to properly enter the modification agreement into its computer system and that "the past-due escrow payments of

$22,339.94 were inadvertently left in the escrow account." *Id*. ¶ 24; Plaintiff's Opposition at 5. Even after Chase admitted this error and corrected its system, however, Hicks did not make any payments on the loan. *See* Defendants' Brief at 12; *see also* Plaintiff's Response to Defendants' Request for Admission ("Plaintiff's Admissions") at 4, No. 11 *attached to* Defendants' Brief *as* Exhibit 2.

On August 7, 2009, Chase notified Hicks that his home would be sold in a foreclosure sale on September 1, 2009. Defendants' Brief at 12. Hicks filed this suit on August 21, 2009 in the 68th Judicial District Court, Dallas County, Texas, and the scheduled foreclosure sale did not occur. *Id*. The defendants promptly removed the case on the basis of the parties' diverse citizenship. Defendants' Chase Home Finance LLC and U.S. Bank National Association's Notice of Removal at 2 (docket entry 1). On March 25, 2010, the defendants moved for summary judgment. Hicks continues to maintain use and possession of his home, despite not making a payment on his loan since September of 2008. Defendants' Brief at 12.

### B. Procedural Background

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).[1] A fact is material if the governing substantive law

---

[1] Disposition of a case through summary judgment "reinforces the
(continued...)

identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th

---

[1](...continued)
purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## II. ANALYSIS

While the defendants fully briefed all of the claims and issues asserted by Hicks in the operative pleadings, Hicks' response to the defendants' motion for summary judgment addresses only his TDCA claim against Chase. As a result, Hicks is deemed to have abandoned his remaining claims by failing to raise them in his responsive filings. See *Thompson v. Exxon Mobil Corporation*, 344 F. Supp. 2d 971, 977 (E.D. Tex. 2004) (citing *Scales v. Slater*, 181 F.3d 703, 709 n.5 (5th Cir. 1999)). Nevertheless, in an abundance of caution, the court will examine each of Hicks' claims in turn.

### A. U.S. Bank's Motion for Summary Judgment

Hicks concedes that his "claims arise out of the *actions Chase took* after the execution of the Modification Agreement Plaintiff executed on June 4, 2008." Plaintiff's Opposition at 1 (emphasis added). Hicks has neither alleged any facts nor produced any evidence to suggest that U.S. Bank was responsible, or is somehow

liable, for the harm he allegedly suffered. Therefore, a reasonable jury could not find in his favor on any of the claims for relief he asserts against U.S. Bank. Accordingly, U.S. Bank's motion for summary judgment is granted.

B. Chase's Motion for Summary Judgment

1. *Breach of Contract*

Hicks argues that Chase breached the modification agreement by capitalizing only the past-due interest and principal amounts into the modified balance of his loan, demanding that he continue to pay escrow amounts that should have also been capitalized, and failing to properly modify the terms of the loan in its computer system. Petition ¶¶ 15, 29.

Under Texas law, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Valero Marketing & Supply Company v. Kalama International*, 51 S.W.3d 345, 351 (Tex. App.--Houston [1st Dist.] 2001, no pet.) (emphasis and citations omitted); *Smith International, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citations omitted). "When the evidence is undisputed regarding a person's conduct under a contract, the court as a matter of law determines whether the conduct shows performance or breach of a contract obligation." *Valero*, 51 S.W.3d at 351 (citing *Lafarge Corporation v. Wolff, Inc.*, 977 S.W.2d 181, 186

(Tex. App.--Austin 1998, pet. denied)). The measure of damages for breach of contract is just compensation for damages actually sustained as a result of the defendants' default. See *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952).

Chase argues that Hicks cannot assert a claim for breach of the modification agreement because he cannot show that he performed under the contract. Defendants' Brief at 18. According to Chase, Hicks breached the modification agreement by not making the down payment on or before June 5, 2008, and by failing to make timely monthly payments -- or any payment at all -- after September 30, 2008. See *id*. at 18-19. Hicks counters that Chase told him that it would accept the down payment after June 5, 2008 and that he could not make any payments until after the modification agreement "closed." *See* Plaintiff's Opposition at 3-4; Hicks' Declaration ¶¶ 7, 14. Hicks admits, however, that "Chase ultimately, after numerous mistakes and debt-collection violations, 'closed' the modification," *see* Plaintiff's Opposition at 3, and he does not dispute the fact that he did not make any payments on the loan after that time. *Id*. at 5; Hicks' Declaration ¶ 19.

While Hicks' allegations raise questions about whether Chase waived strict compliance with the deadline for the down payment or orally modified the terms of the modification agreement to delay monthly payments until after the modification agreement "closed," these issues are not material. Even if Hicks proved waiver or oral modification, his breach of contract claim would still fail as a matter of law because

he did not perform under the modification agreement after it closed. Because Hicks has not raised a genuine issue of material fact, Chase is entitled to summary judgment on Hicks' breach of contract claim.

2. *DTPA*

Hicks alleges that Chase violated the DTPA by offering to modify the loan and failing to deliver on that promise, misrepresenting the character and extent of the debt he owed, and attempting to foreclose on the property and collect the fees and costs associated with the foreclosure. Petition ¶¶ 24, 27. Chase moved for summary judgment on Hicks' DTPA claims, arguing *inter alia* that Hicks is not a "consumer" under the statute so he lacks standing to bring his DTPA and TDCA tie-in[2] claims. Defendants' Brief at 14-18, 21-22.

To prevail on a DTPA cause of action, the plaintiff must establish that he is a consumer who sought or acquired, by purchase or lease, goods or services that form the basis of his complaint. *See* TEX. BUS. & COM. CODE §§ 17.41, *et seq.* (Vernon 2008); see also *Amstadt v. United States Brass Corporation*, 919 S.W.2d 644, 649 (Tex. 1996); *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App.--San Antonio 2002, pet. denied); *Melody Home Manufacturing Company v. Barnes*, 741 S.W.2d 349, 351-352

---

[2] Hicks asserts a TDCA tie-in claim under the DTPA. Petition ¶ 27; see also TEX. FIN. CODE ANN. § 392.404(a) (Vernon 2008) (violation of statute governing "Debt Collection").

(Tex. 1987). Whether a plaintiff qualifies as a "consumer" under the DTPA is a question of law for the court to decide. *Bohls*, 75 S.W.3d at 479.

Texas courts have long held that a person who seeks only to borrow money is not a consumer under the statute because the mere lending of money involves neither a good nor a service. See *La Sara Grain Company v. First National Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984) (citing *Riverside National Bank v. Lewis*, 603 S.W.2d 169 (Tex. 1980)). A loan, by itself, is not a good or service. *Riverside*, 603 S.W.2d at 174-75. A lender, however, may be subject to a DTPA claim if the borrower's "objective" is the purchase or lease of a good or service. *La Sara*, 673 S.W.2d at 567. "[T]he key principle in determining consumer status is that the goods or services purchased must be an *objective* of the transaction, not merely incidental to it." *Maginn v. Norwest Mortgage Corporation*, 919 S.W.2d 164, 167 (Tex. App.--Austin 1996, no pet.) (emphasis in original) (quoting *First State Bank v. Keilman*, 851 S.W.2d 914, 929 (Tex. App.--Austin 1993, writ denied)).

Here, the parties agree that Chase acted only as the servicer of Hicks' loan. Hicks' effort to modify the terms of his original note was tantamount to seeking an extension of credit from Chase. Hicks' sole objective in the transaction was to obtain an extension of credit from Chase -- modifying his preexisting financial obligation by capitalizing the arrearage -- to avoid foreclosure on his home. Because Chase facilitated only this extension of credit, it did not provide, as a matter of law, a

"good" or "service" contemplated by the DTPA.  See *Hansberger v. EMC Mortgage Corporation*, No. 04-08-00438-CV, 2009 WL 2264996, at *2 (Tex. App.--San Antonio July 29, 2009, pet. denied); see also *Mitchell v. Chase Home Finance LLC*, No. 3:06-CV-2099-K, 2008 WL 623395, at *5 (N.D. Tex. Mar. 4, 2008) (Kinkeade, J.) ("Numerous Texas courts have held that loan applicants do not qualify as consumers under the DTPA, and that borrowing money is not he acquisition of a good or service under the DTPA.").  Accordingly, Hicks does not qualify as a consumer under the DTPA.  Because he lacks standing to bring a cause of action under the statute, Chase is entitled to judgment as a matter of law on Hicks' DTPA and TDCA "tie-in" claims.  *See* TEX. BUS. & COM. CODE ANN. § 17.50(h); *Marketic v. U.S. Bank National Association*, 436 F. Supp. 2d 842, 854-55 (N.D. Tex. 2006) (Buchmeyer, J.) (explaining that a party must be a consumer under the DTPA to bring a tie-in claim).

### 3.  *TDCA*

Hicks argues that Chase's efforts to collect on the loan after June 4, 2008 did not properly reflect the terms of the modification agreement and violated the TDCA by (1) misrepresenting the extent and amount of the debt; (2) constituting false and deceptive means to collect a debt; or (3) amounting to an attempt to collect a charge, fee, or expense not authorized by the modification agreement.  Plaintiff's Opposition at 1, 8-9.  Chase counters that Hicks' TDCA claim simply rehashes his breach of contract claim, which is not actionable under the TDCA, and the deed of trust

authorized Chase, upon Hicks' default, to accelerate the debt, foreclose on the property, and collect all costs and fees associated with the foreclosure. Defendants' Brief at 18-21.

Section 392.303 of the Texas Finance Code precludes a "debt collector" from using unfair or unconscionable means to collect a debt, including collecting or attempting to collect a "charge, fee, or expense incidental to the obligation *unless . . . expressly authorized by the agreement creating the obligation*." TEX. FIN. CODE ANN. § 392.303 (emphasis added). Similarly, section 392.304(a) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt . . . or using any other false representation or deceptive means to collect a debt . . . ." *Id*. §§ 392.304(a)(8), (19). The TDCA, however, does not prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." *Id*. § 392.301(b)(3); see also *Sweet v. Wachovia Bank and Trust Company*, No. Civ.A. 3:03-CV-1212-R, 2004 WL 1238180, at *3 (N.D. Tex. Feb. 26, 2004) (Buchmeyer, J.).

Hicks cites *EMC Mortgage Corporation v. Jones* for the proposition that a contractual right to foreclose on a property does not completely shield a debt collector from liability under the TDCA. *See* Plaintiff's Opposition at 7-8. On this point, Hicks is correct. Liability for violations of the TDCA can be based on both "the right to" collect and the "manner in which the right [is] exercised." See *EMC*

*Mortgage Corporation v. Jones*, 252 S.W.3d 857, 869-70 (Tex. App.--Dallas 2008, no pet.). Hicks' TDCA claim seemingly raises both of these issues, but for either of them to be resolved in his favor, the modification agreement must have been in effect.

If the modification agreement was in effect, Chase had a duty not to collect on the loan. Conversely, if the modification agreement was without force, Chase could have properly invoked its right to collect under the deed of trust -- a right that was unaffected by the TDCA -- after Hicks defaulted in early 2007. *See* Petition ¶ 22; Plaintiff's Opposition at 2; Defendants' Reply at 5; see also *Sweet*, 2004 WL 1238180, at *3. The merits of Hicks' TDCA claim regarding Chase's legal right to collect, therefore, wholly depend on the effect of the modification agreement. But Hicks breached modification agreement: he has only made two untimely payments on the loan since the parties executed the modification agreement. Hicks' Declaration ¶¶ 15, 19; Plaintiff's Admissions at 4, No. 11. Hicks' nonperformance nullified the modification agreement and vested Chase's right to collect under the deed of trust. *See* Defendants' Appendix at 20, 38-48. Since the deed of trust authorizes Chase to collect on the loan by accelerating the debt, foreclosing on the property, and recouping all costs associated with the foreclosure, Hicks' claim that Chase violated the TDCA by attempting to collect on the loan fails as a matter of law.

To the extent Hicks challenges "the manner in which" Chase exercised its right to collect on the loan, Hicks' TDCA claim also fails. Hicks alleges that, on multiple

occasions, Chase demanded that he pay amounts that were not "legally chargeable to him under the Modification Agreement." See Plaintiff's Opposition at 8-9. These demands, according to Hicks, "misrepresented the extent and amount of the debt . . . , constituted false and deceptive means to collect a debt . . . , and [were an attempt] to collect a 'charge, fee or expense' which was not authorized by the [modification] agreement." *Id*. Hicks' claims sound in contract.

Hicks has not alleged that Chase misrepresented its identity or the identity of the entity on whose behalf they were attempting to collect the debt. See, *e.g.*, *Casstevens v. Smith*, 269 S.W.3d 222, 234-35 (Tex. App.--Texarkana 2008, pet. denied) (misrepresenting on whose behalf the debt collector sought to collect the debt); *Lilly v. Tolar*, No. 06-01-00163-CV, 2002 WL 1926527, at *8-9 (Tex. App.--Texarkana Aug. 22, 2002, pet. denied) (involving failure to disclose clearly in communication with the debtor that the debt collector is attempting to collect a consumer debt). Nor has he alleged that Chase misrepresented the consequences that would result from a failure to pay the amount owed. See, *e.g.*, *CA Partners v. Spears*, 274 S.W.3d 51, 71 (Tex. App.--Houston [14 Dist.] 2008, pet. denied) (misrepresenting that failure to pay debt would result in the sale of personal property); *Gomez v. Wells Fargo Bank, N.A.*, No. No. 3:10-CV-0381-B, 2010 WL 2900351, at *4-5 (N.D. Tex. July 21, 2010) (Boyle, J.) (involving a misrepresentation that the loan would be accelerated despite not providing legally sufficient notice and a

grace period to cure). Rather, Hicks' TDCA claim springs from alleged misrepresentations made by Chase as a result of its failure to abide by the terms of the modification agreement. Plaintiff's Opposition at 8-9. This is a breach of contract claim cloaked in the lexicon of the TDCA. Hicks essentially argues that: (1) Chase represented that it would perform under the modification agreement, and (2) Chase's nonperformance means that it made misrepresentations in violation of the TDCA. To accept this reasoning, however, would convert every breach of contract into a TDCA claim. Cf. *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) (per curiam) (applying similar reasoning to a plaintiff's DTPA claim). The court refuses to do so.

Hicks points to *EMC Mortgage* as support for his position that Chase's misrepresentations are actionable under the TDCA. Hicks' reliance on *EMC Mortgage*, however, is misplaced. In *EMC Mortgage*, the Texas Court of Appeals held that the evidence presented at trial was sufficient to support the jury's finding that the defendant was liable for the common law tort of unreasonable collection. See *EMC Mortgage*, 252 S.W.3d at 868-70. The plaintiffs in that case were told on a number of occasions that their loan modification was in order and the foreclosure proceedings would be stopped. *Id*. at 864. Nevertheless, one evening a "very large, intimidating man" appeared at the plaintiffs' home on behalf of EMC, "made his way into the foyer of the house . . . began yelling and screaming," and he "demand[ed] the

keys to the house and told the [plaintiffs] to get out." *Id*. He also threatened to throw all of the plaintiffs' possessions onto the front lawn if they did not remove them immediately. *Id*. To make matters worse, EMC erroneously sold the plaintiffs' home in a foreclosure sale, did not rescind the sale until four months after representing to the plaintiffs that it had done so, and inadvertently caused the plaintiffs' property to be uninsured for six months. *Id*. at 864-65. Despite this litany of unconscionable behavior, the plaintiffs continued to hand-deliver their monthly mortgage payments to EMC. *Id*. at 864. EMC responded by placing these payments into a suspense account, adding attorney's fees to the plaintiffs' loan balance, and attempting to foreclose on the property a second time because the plaintiffs allegedly did not submit a subordination agreement from the second lien holder. *Id*. at 865. On those facts, the court found that EMC's actions were sufficient to support a finding of unreasonable collection efforts. *Id*. at 870.

This case is plainly distinguishable from *EMC Mortgage*. The plaintiffs in *EMC Mortgage* satisfied their obligation under the modification agreement by making timely monthly payments; Hicks has not. Likewise, Hicks does not dispute that Chase's actions would have been reasonable but for the modification agreement -- for example, no large man appeared at Hicks' home threatening to forcefully remove him and/or his possessions -- and Hicks does not deny that the amounts Chase demanded were commensurate with the amounts he owed under the original loan and deed of

keys to the house and told the [plaintiffs] to get out." *Id*. He also threatened to throw all of the plaintiffs' possessions onto the front lawn if they did not remove them immediately. *Id*. To make matters worse, EMC erroneously sold the plaintiffs' home in a foreclosure sale, did not rescind the sale until four months after representing to the plaintiffs that it had done so, and inadvertently caused the plaintiffs' property to be uninsured for six months. *Id*. at 864-65. Despite this litany of unconscionable behavior, the plaintiffs continued to hand-deliver their monthly mortgage payments to EMC. *Id*. at 864. EMC responded by placing these payments into a suspense account, adding attorney's fees to the plaintiffs' loan balance, and attempting to foreclose on the property a second time because the plaintiffs allegedly did not submit a subordination agreement from the second lien holder. *Id*. at 865. On those facts, the court found that EMC's actions were sufficient to support a finding of unreasonable collection efforts. *Id*. at 870.

This case is plainly distinguishable from *EMC Mortgage*. The plaintiffs in *EMC Mortgage* satisfied their obligation under the modification agreement by making timely monthly payments; Hicks has not. Likewise, Hicks does not dispute that Chase's actions would have been reasonable but for the modification agreement -- for example, no large man appeared at Hicks' home threatening to forcefully remove him and/or his possessions -- and Hicks does not deny that the amounts Chase demanded were commensurate with the amounts he owed under the original loan and deed of

keys to the house and told the [plaintiffs] to get out." *Id*. He also threatened to throw all of the plaintiffs' possessions onto the front lawn if they did not remove them immediately. *Id*. To make matters worse, EMC erroneously sold the plaintiffs' home in a foreclosure sale, did not rescind the sale until four months after representing to the plaintiffs that it had done so, and inadvertently caused the plaintiffs' property to be uninsured for six months. *Id*. at 864-65. Despite this litany of unconscionable behavior, the plaintiffs continued to hand-deliver their monthly mortgage payments to EMC. *Id*. at 864. EMC responded by placing these payments into a suspense account, adding attorney's fees to the plaintiffs' loan balance, and attempting to foreclose on the property a second time because the plaintiffs allegedly did not submit a subordination agreement from the second lien holder. *Id*. at 865. On those facts, the court found that EMC's actions were sufficient to support a finding of unreasonable collection efforts. *Id*. at 870.

This case is plainly distinguishable from *EMC Mortgage*. The plaintiffs in *EMC Mortgage* satisfied their obligation under the modification agreement by making timely monthly payments; Hicks has not. Likewise, Hicks does not dispute that Chase's actions would have been reasonable but for the modification agreement -- for example, no large man appeared at Hicks' home threatening to forcefully remove him and/or his possessions -- and Hicks does not deny that the amounts Chase demanded were commensurate with the amounts he owed under the original loan and deed of

trust. Moreover, Chase did not foreclose on the property. Hicks continues to have unfettered use and possession of his home, despite not making a single payment on the loan since September of 2008. Because the deed of trust gave Chase a contractual right to collect on the loan, and Hicks' does not dispute that Chase's representations accurately reflected the amounts Hicks would have been required to pay but for the modification agreement, Chase is entitled to judgment as a matter of law on Hicks' TDCA claim.

### III. CONCLUSION

For the reasons stated above, the defendants' motion to for summary judgment is **GRANTED**.

**SO ORDERED**.

October 21, 2010.

_A. Joe Fish_
**A. JOE FISH**
**Senior United States District Judge**